AFFIDAVIT IN SUPPORT OF APPLICATION FOR A COMPLAINT

I, Special Agent Jennifer Morin, being sworn, state:

INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have served with the FBI since January 2019. Prior to my current role, I served as an Officer in the U.S. Army and as a Special Agent with the Defense Security Service.

2. I am a graduate of the FBI Academy, where I received training concerning a wide array of criminal investigative techniques. I received training in topics including surveillance, the use of confidential informants, the use of undercover officers, the gathering of evidence, the execution of search warrants, and criminal prosecution. I have also received training specific to drug trafficking offenses and the investigation of such offenses.

3. From my training and my experience as an FBI agent, I am generally familiar with various aspects of drug trafficking, including but not limited to the methods and practices utilized by drug traffickers in acquiring, packaging, and selling illegal drugs and in communicating with customers and co-conspirators regarding the illegal drugs. I am also familiar with the trafficking of fentanyl in and around Massachusetts, including but not limited to the appearance, packaging, and pricing of fentanyl and the manner in which drug customers and suppliers communicate concerning the sale or proposed sale of fentanyl.

PURPOSE OF AFFIDAVIT

4. I submit this affidavit in support of a Criminal Complaint charging Jonathan MARQUEZ with violating Title 21, United States Code, Section 841(a)(1).

5. I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral reports made to me by other local law enforcement agents.

6.  This affidavit is submitted for the limited purpose of establishing probable cause to believe that MARQUEZ has committed the above offense. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation about MARQUEZ or the various instances on which law enforcement personnel has personally observed MARQUEZ distributing fentanyl. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

## EVIDENCE IN SUPPORT OF PROBABLE CAUSE

7.  On September 12, 2019, I participated in a pre-planned law enforcement operation that occurred in Lawrence, Massachusetts. Other law enforcement officers, including from the FBI and Massachusetts State Police, also participated in this operation.

8.  Prior to the controlled transaction, an undercover officer (the "UC") engaged in phone communications with an individual concerning a proposed fentanyl deal, who utilized phone 978-237-6873. I have spoken with the UC about these communications. Prior to September 12, 2019, the UC knew this individual as "Flacco." The UC is aware of at least one controlled purchase arranged via "Flacco" prior to September 12, 2019.

9.  On September 12, 2019, the UC called "Flacco" and requested "50." During this call, Flacco sought to clarify the UC sought 50 "grams," and the UC confirmed. The UC and "Flacco" discussed an amount of $1,500. Based on my training and experience, and my conversation with the UC, I understand that the UC ordered 50 grams of fentanyl from "Flacco" for an agreed-price of $1,500. Later that day, "Flacco" proposed a meeting at a location near 241 South Union Street in Lawrence, Massachusetts.

10. I traveled to the location near 241 South Union Street along with other law enforcement officers and conducted surveillance. The UC proceeded to the aforementioned the location in an undercover vehicle (the "White Honda").

11. "Flacco" proposed that the UC meet in an alleyway by 241 South Union Street, and the UC responded that he was in a White Honda Accord in a parking lot next to the alleyway. "Flacco" told the UC to stay at that location.

12. I observed an individual ("the Subject") arrive at the location and enter the White Honda. I understand from the UC that the UC then showed cash to the Subject. I observed the Subject exit the White Honda, enter an alleyway, exit the alleyway, and then re-enter the White Honda. At this time, the only occupants of the White Honda were the UC and the Subject.

13. At approximately 4:25pm, other officers and I approached the White Honda and removed and arrested the Subject, who had been in the White Honda with the UC.

14. A second undercover officer ("UC2") on the scene observed the Subject and indicated that he (UC2) had made two controlled purchases from the Subject within the past month and knew him as "Flex." On these two prior occasions, UC2 had ordered "brown" (*i.e.*, heroin or fentanyl), and "Flex" had distributed a substance that appeared to be consistent with heroin or fentanyl.

15. I understand from other law enforcement officers who were involved with this operation that, while in the White Honda, the Subject distributed a package to the UC in exchange for $500 cash.[1] The package consisted of a larger bag containing 11 individually-wrapped bags

---

[1] While the UC had discussed a deal for $1,500, the UC brought only $500 to the controlled purchase to provide to the seller.

containing a brownish powder.[2] Based on my training and experience, I know that the appearance of this package is consistent with the manner in which fentanyl often appears when packaged for sale and/or redistribution. I also spoke with Special Agent Charles E. Simon, who examined and field-tested one bag from the package. Simon indicated to me that the color, texture, and packaging of this package were consistent with fentanyl.[3]

16. The UC, who has been a law enforcement officer for more than a decade and who has been assigned to a drug task force for approximately four years, indicated to me that the packaging of the bag distributed by the Subject was consistent with the manner in which fentanyl and other drugs is packaged.

17. During booking, the Subject identified himself as Jonathan Lee MARQUEZ.

18. The field test of the substance that MARQUEZ distributed to the UC indicated that the substance was positive for the presence of "fentanyl compound or methamphetamine."[4] An

---

[2] A photograph of the package and its contents follows below:

[3] SA Simon has been an agent with the FBI for 8 years and was a police officer for 12 years. A majority of SA Simon's time has been spent working on drug investigations

[4] I understand that, as used here, "fentanyl compound" includes fentanyl and its analogues.

agent weighed the substance that MARQUEZ distributed to the UC and its packaging and found the weight to be approximately 18.8 grams.

## CONCLUSION

19.  Based on the foregoing, there is probable cause to believe that, on September 12, 2019, Jonathan MARQUEZ did knowingly and intentionally distribute and possess with intent to distribute fentanyl, in violation of Title 21, United States Code, Section 841(a)(1).

I declare that the foregoing is true and correct.

_____
Jennifer Morin
Federal Bureau of Investigation

Subscribed and sworn to before me,
this 13th day of September, 2019.

_____
Honorable Jennifer C. Boal
United States Magistrate Judge
District of Massachusetts